IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOLLY R. VEJVODA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No: 09 C 7677 |
| v. | ) |
| | ) Magistrate Judge Jeffrey Cole |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Holly Vejvoda, seeks an award of attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, arguing that the Commissioner's position in denying her application for Disability Insurance Benefits was not substantially justified. She asks for an award of $8,096.46 for 46 hours of work, plus an additional $440.02 for 2.5 hours spent on her reply brief. For the following reasons, the petition is granted – in part.

The EAJA provides that a district court may award attorney's fees where (1) the plaintiff is a "prevailing party"; (2) the government's position was not substantially justified; (3) no "special circumstances make an award unjust"; and (4) the fee application is submitted to the court within 30 days of final judgment and is supported by an itemized statement. 28 U.S.C. § 2412(d)(1)(A), (B); *Golembiewski v. Barnhart*, 382 F.3d 721, 723-24 (7th Cir. 2004). Costs are available under 28 U.S.C. § 2412(a)(1). Here, by virtue of the remand of his case, the plaintiff is the prevailing party. *Shalala v. Schaefer*, 509 U.S. 292, 302 (1993). There are no "special circumstances" alleged. *See Golembiewski*, 382 F.3d at 724; *United States v. Hallmark Const. Co.*, 200 F.3d 1076,

1079 (7th Cir. 2000). The plaintiff's application was timely filed and is supported by an itemized statement. As to the final point – whether the government's position was substantially justified – the Commissioner bears the burden of proof. *Scarborough v. Principi* 541 U.S. 401, 416 (2004); *Golembiewski*, 382 F.3d at 724.

Substantial justification is a nebulous standard. It is "'not susceptible to a firm rule or even a 'useful generalization.'" *Bassett v. Astrue,* 641 F.3d 857, 859 (7th Cir. 2011)( quoting *Pierce v. Underwood,* 487 U.S. 552, 562 (1988)). To be "substantially justified," the Commissioner's position must have a reasonable basis in law and fact. *Pierce v. Underwood,* 487 U.S. at 565; *Cunningham v. Barhart*, 440 F.3d 862, 864 (7th Cir. 2006. It must be stronger than merely non-frivolous. *Pierce,* 487 U.S. at 566. On the other hand, the Commissioner's position need not have been correct. *Pierce,* 487 U.S. at 566 n. 2. "Substantially justified" does not mean "justified to a high degree." The standard is satisfied if there is a "genuine dispute" or if "reasonable persons could differ as to the appropriateness of the contested action." *Stein v. Sullivan,* 966 F.2d 317, 320 (7th Cir.1992), citing *Pierce,* 487 U.S. at 565.

The ALJ in this case neglected an entire line of evidence – plaintiff's cystitis – and failed to discuss its effect on her ability to work. He didn't believe the plaintiff had urinary incontinence, but he based his disbelief on the fact that her bladder cancer was in remission. But cystitis could cause incontinence as well. So, the ALJ's error was two-fold: ignoring an impairment and failing to provide adequate support for his credibility finding. The ALJ also failed to address the side effects of plaintiff's medication – she claimed it made her groggy – ignored the fact that plaintiff was taking a narcotic, misinterpreted a report on her range of motion, misread an x-ray report, and relied on a

report that was not listed as an exhibit in the record. That's quite a few mistakes; too many, as the Memorandum Opinion and Order said, to meet even the "lax" logical bridge standard. (Dkt. # 25, at 20).

Here's where things get even more difficult than usual in dealing with substantial justification. There could be no more well-settled piece of law on Social Security disability cases in this Circuit than the logical bridge requirement. The Seventh Circuit has iterated the phrase nearly one hundred times in sixteen years. In many cases, it has termed the requirement one of "minimal articulation." *See* discussion in *Fuchs v. Astrue*, _F.Supp.2d _, 2012 WL 2711033, *7 (N.D.Ill. 2012). It would seem, therefore, that a failure by an ALJ to meet this seemingly lax standard would mean the government's position did not have a reasonable basis in law.

But, not so. The Seventh Circuit has carved out an exception for cases in which the ALJ's decision failed to comply with its logical bridge line of cases. It has said that "it typically takes something more egregious than just a run-of-the-mill error in articulation to make the commissioner's position unjustified—something like the ALJ's ignoring or mischaracterizing a significant body of evidence, or the commissioner's defending the ALJ's opinion on a forbidden basis." *Bassett v. Astrue*, 641 F.3d 857, 859-60 (7th Cir. 2011). An ALJ might provide an analysis of a salient point that is "cursory and inadequate . . . but that shortcoming alone usually will not be enough to poison the opinion—or the commissioner's defense of the opinion." 641 F.3d at 860 (citing *United States v. Thouvenot, Wade & Moerschen, Inc.,* 596 F.3d 378, 387 (7th Cir. 2010). Left unanswered is how egregious the error must be to merit a fee award, or how many dots need be connected, *see Cunningham v. Barhart*, 440 F.3d 862, 865 (7th Cir. 2006), to

make the government's position "substantially unjustified."  It seems a district court is left to speculate where the line might be between falling short of the Seventh Circuit's "lax" standard and *really* falling short.

So the problem with navigating the logical-bridge case law in the context of an EAJA petition is the fact that a decision can be overturned on a logical-bridge basis even if there is substantial evidence in the record, but the ALJ ignored it.  As such, the government's position would have a reasonable basis in fact.  *See Britton-Dillon v. Astrue*, 433 Fed.Appx. 474, 476 (7th Cir. 2011)(citing *Cunningham v. Barnhart*, 440 F.3d 862, 863–64 (7th Cir.2006)).  It just might not have a reasonable basis in law, depending on how much the ALJ missed in writing his or her opinion.

In the instant case, for example, the Memorandum Opinion and Order noted that there were a number of things in the record that detracted from plaintiff's claim and her credibility – the ALJ just didn't employ them to bolster his decision. (Dkt. #25, at 17-18). But, as the Memorandum Opinion and Order reminded the government, using those pieces of evidence in a brief to demonstrate that the ALJ's decision was supported by substantial evidence in the record was a violation of the *Chenery* rule.  (Dkt. #25, at 17); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).  That, in and of itself, is a position contrary to well-established law.

There were other flaws here though, perhaps most notably the ALJ's neglect of plaintiff's cystitis and the effect of that neglect on his credibility finding, and the mischaracterization or misreading of two doctors' reports.  Mischaracterizing medical records and ignoring lines of evidence have been found sufficiently egregious to warrant a fee award.  *See Cunningham*, 440 F.3d at 864; *Golembiewski*, 382 F.3d at 724.  The

cystitis is significant to the issue of how long plaintiff can work without breaks, and the significance of a substantial limitation of range of motion and x-ray evidence of an underlying back impairment and a phantom release for work is obvious. Accordingly, it must be concluded that the government's position was not substantially justified and the plaintiff is entitled to fees under EAJA.

The next issue is whether plaintiff is entitled to the hourly rate she requests. The statutory rate under EAJA is $125 per hour. 28 U.S.C. §2412(d)(2)(A). Plaintiff submits that she is entitled an increase in the statutory rate due to the increased cost of living since the statutory rate was promulgated. Relying on United States Department of Labor statistics for the Chicago-Gary-Kenosha area, she argues that the proper rate should be $176.01 per hour.

The Seventh Circuit has stated it is not enough to attach an inflation statistic chart to an EAJA petition and ask for a cost-of-living increase:

> The Equal Access to Justice Act does not authorize an award of the prevailing hourly rate, as such, unless it is less than $125 an hour. For that matter it doesn't authorize an award of $125 per hour, or even $125 plus inflation. The $125 rate is a presumptive ceiling; to justify a higher rate the plaintiff must point to inflation or some other special factor. If he points to inflation he still must show that it actually justifies a higher fee; for while it might seem obvious that a statutory price ceiling should be raised in step with inflation, to do that as a rote matter would produce windfalls in some cases. Inflation affects different markets, and different costs in the same market, in different ways. The framers of the Equal Access to Justice Act were right therefore not to create an *entitlement* to an inflation adjustment; the lawyer seeking such an adjustment must show that inflation has increased the cost of providing adequate legal service to a person seeking relief against the government.

*Mathews-Sheets v. Astrue*, 653 F.3d 560, 563 (7th Cir. 2011)(Posner, J.).

And so, a "plaintiff's lawyer [has] to show that without a cost of living increase that would bring the fee award up to $17[6] per hour, a lawyer capable of competently handling the challenge that his client mounted to the denial of social security disability benefits could not be found in the relevant geographical area to handle such a case." 653 F.3d at 563. In other words, the allowable rate is not the inflation-adjusted rate or even the prevailing market rate, but apparently the least expensive rate charged by a competent attorney in the same area for the same type of work.

The opinion in *Matthews-Sheets* does not explain how a plaintiff would go about proving that no competent lawyer in the area would handle the case for less than the cost-of-living adjusted amount sought by the fee petition. It's hard to prove a negative, and since a lawyer's unsupported affidavit is generally insufficient to establish market rates, *Harper v. City of Chicago Heights,* 223 F.3d 593, 604 (7th Cir.2000), it would seem that an attorney seeking a cost of living adjustment could not make the case through his own affidavit positing that no such lawyer exists or could be found.

Market rates in this area are generally shown by affidavits from a colleague or competitor in the relevant market who is familiar with market rates in the relevant locale. *See Johnson v. GDF, Inc.*, – F.3d –, –, 2012 WL 456484 (7th Cir. 2012)(best evidence of market rate is attorney's actual billing rate; next best evidence is rates of similarly skilled attorneys in the relevant market); *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 640 (7th Cir. 2011)(presumptive reasonable rate show by what attorney actually charges and prevailing rates in the community); *Gautreaux v. Chicago Housing Authority*, 491 F.3d 649, 659 (7th Cir. 2007)("The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of

6

work in question.").[1] Presumably, affidavits from those lawyers knowledgeable about market rates attesting to the fact that no competent attorney in the relevant geographic market would take a social security for less than the cost-of-living adjusted amount sought by the plaintiff's counsel ought to suffice – so long as the affiant could explain how he or she came to that conclusion. Without that showing, the affidavit may well not pass muster.

Here, the plaintiff's attorney has averred that the rate of "$176.01 is below the market rate for the same kind and quality of legal services performed in this case." Does this meet *Mathews-Sheets*'s requirement? Probably not because the affiants do not rule out the possibility that a competent attorney could be found in the area willing to work for less than $176 per hour.

It's an academic point here, however, because the government has conceded that the plaintiff is entitled to a cost-of-living increase, *see Tchemkou v. Mukasey*, 517 F.3d 506, 512 (7th Cir. 2008)( awarding government's conceded inflationary rate), just not as high as the plaintiff has demanded. The plaintiff appears to have calculated her fees based on the final month she worked on this case, while the government wants the fee calculated on a monthly basis fro the entire period plaintiff worked. The government is correct on this point; cost-of-living adjustments must be made for the period the work was performed. *Tchemkou*, 517 F.3d at 512, *Marcus v. Shalala*, 17 F.3d 1033, 1040 (7th

---

[1] In Social Security disability benefits cases, the fee the plaintiff's attorney receives is, invariably, an EAJA fee award, so it would be difficult for her to say that the rate she bills is reasonable because it is what their client is willing to pay. *See Cintas Corp. v. Perry,* 517 F.3d 459, 469–70 (7th Cir.2008)("best evidence of whether attorney's fees are reasonable is whether a party has paid them."); *Jeffboat, LLC v. Director, Office of Workers' Compensation Programs*, 553 F.3d 487, 491 (7th Cir. 2009)(Seventh Circuit's "preference [is] for awarding attorneys' fees that are commensurate with what an attorney would otherwise have earned from paying clients.").

Cir. 1994). Moreover, the plaintiff does not dispute this in her reply brief.[2] But, a cost-of living adjustment need not be calculated on a monthly basis; a yearly basis is adequate. *Marcus*, 17 F.3d at 1040. Accordingly, the plaintiff must submit a new petition employing a yearly cost-of-living adjustment. Because this requirement has been the law of this circuit since at least 1994, plaintiff will not be awarded additional fees for the time spent on this task.

Finally, the plaintiff requests that any fee award be paid directly to her attorney. As the government points out, however, an EAJA fee is payable to the litigant, not her attorney, and is subject to an offset for any pre-existing debt the litigant might owe the United States. *Astrue v. Ratliff*, – U.S. –, –, 130 S.Ct. 2521, 2526-27 (2010). The *Mathews-Sheets* court interpreted *Ratliff* as suggesting that, "if there is an assignment, the only ground for the district court's insisting on making the award to the plaintiff has debts that may be prior to what she owes her lawyer." 653 F.3d at 565. When there is no indication of such a debt, the court cannot "ignore the assignment and order the fee paid to [the plaintiff]." 653 F.3d at 565-66. Here, there is no indication of a fee assignment, so the award shall be made to the plaintiff, not her counsel.

## V.

### CONCLUSION

The plaintiff's petition for an award of fees under EAJA [#27] is GRANTED, with the *proviso* that she must file within seven days a supplement as to the amount she seeks based on the cost of living increases on a yearly basis as stated in this opinion. The

---

[2] Plaintiff's attorney stated in her affidavit that if the government took issue with her requested rate, she would "present additional argument about the rates in a reply brief . . . ." (Aff. As to Attorney's Fees, ¶ 3). The plaintiff did not address the issue of rate in her reply.

8

award shall then be made to the plaintiff rather than her attorney. The case is set for status on 10/4/12 at 8:30 a.m. The parties are reminded of the requirement of Local Rule 5.2(f) which requires that a courtesy copy of all filings be provided to chambers within one business day of its filing.

**ENTERED:** _____
UNITED STATES MAGISTRATE JUDGE

DATE: 9/20/12